## HUGH T. DAVIS v. A. M. MITCHELL.

34    81
f 131   89

SEIZURE AND SALE OF PROMISSORY NOTE ON EXECUTION.—Under the provisions of the one hundred and twenty-fourth, one hundred and twenty-fifth, two hundred and seventeenth, and two hundred and twentieth sections of the Practice Act, a promissory note, being the property of the defendant in an attachment and execution, is liable to seizure and sale thereunder, and the purchaser takes

it, when delivered to him, upon the same terms as if it had come to his hands in the ordinary course of business.

IDEM.—Whether, in such case, the sale will be valid without a delivery of the note to the purchaser, is discussed, but not decided.

FRAUD AS A DEFENCE.— Where an action was brought on a promissory note, which the plaintiff had purchased at an execution sale of the property of the payee of the note, and where the maker had executed the note as part of a transaction between the maker and payee which was designed to defraud the creditors of the payee : *held,* that the payee could neither aver nor prove such fraudulent transaction as a defence to said action.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

This was an action on a promissory note. The answer admitted the execution of the note, and set up in defence, first, that it was without consideration, and that defendant, by reason of its execution, did not become indebted to or liable to pay any sum whatever to the holder thereof; second, that if defendant ever became liable in any sum on said note, the same had been fully paid, except the sum of forty-five dollars and twenty-five cents, to the lawful holder thereof, before the plaintiff acquired the possession or any interest in said note ; and third, that the plaintiff is not the legal owner and holder of the note. The action was tried by the Court without a jury.

The following are the findings of fact in the case :

" 1. That the defendant executed and delivered to David Thomas the promissory note sued on in this action, on or about the twenty-third day of April, 1862.

" 2. That at the time of the execution and delivery of said note, the said Mitchell also delivered to the said Thomas the sum of three hundred dollars; he (Mitchell) receiving from the said Thomas a quantity of personal property, consisting of cows, oxen, horses, wagons, etc.

" 3. That at the time of the transaction mentioned in the last preceding finding, it was understood between them, the said Mitchell and Thomas, that as affecting the rights of the creditors of the said Thomas, the transfer of said personal

property by the said Thomas to the said Mitchell was to be an absolute sale thereof, for the consideration of said sum of three hundred dollars, and the giving of the note mentioned in Finding Number One; but that as between themselves it was understood that the said Mitchell was to receive said personal property, take charge of it as his own, sell and dispose of it at such time and at such terms as he saw fit, and from the amount of the proceeds of such sale was to receive a reasonable sum for his necessary trouble and expenses in the care of said property; and the further amount of said sum of three hundred dollars paid to the said Mitchell, and interest thereon at three per cent per month, and the balance of such proceeds, if any there were, was to pay to the said David Thomas, at which time the said Thomas was to deliver up to the said Mitchell the note in question in this suit.

" 4. That at the time of the said transaction between the said Thomas and Mitchell, the plaintiff in this action was a creditor of the said Thomas in a large amount, and was at the time looking to enforce payment of his demand against the said Thomas, but was prevented from so doing by reason of the representations of the said Mitchell and others to himself, that he (Mitchell) owned the property received by him from the said Thomas.

" 5. That on or about the 25th day of March, A. D. 1865, the said plaintiff (his demand against the said David Thomas remaining still unpaid) commenced suit against the said Thomas in the Fifth Judicial District Court to collect said demand. That in said suit one Richard Thomas (brother of David Thomas) and the defendant Mitchell were garnisheed as being indebted to the said David Thomas, and that upon said garnishee process the defendant Mitchell answered that he was indebted to David Thomas in the sum of forty-five dollars and twenty-three cents, and that he thereupon tendered payment of the same to the plaintiff Davis, who refused to accept it.

" 6. That prior to the said 25th day of March, A. D. 1865, the said Mitchell had offered to pay to the said Richard

Thomas the balance of all moneys in his possession arising from the sale of the property received by him, the said Mitchell, from David Thomas, over and above the sum of three hundred dollars, and expenses mentioned in the last clause of Finding Number Three; he, said Richard, having in his possession the note mentioned in Finding One, with directions from David Thomas to deliver the same to Mitchell. That after the said Mitchell had been garnisheed in the suit by plaintiff against David Thomas, he, the said Mitchell, and Richard Thomas, determined the amount of such balance of proceeds to be the sum of forty-five and twenty-three one hundredths dollars, that being the amount due upon the understanding set forth in the last clause of Finding Number Three to David Thomas from Mitchell.

"7. That the said plaintiff recovered judgment against the said David Thomas in his suit as aforesaid, for a large amount, and caused an execution to be duly issued thereon; that under said execution the note in suit was levied upon, the same being received from Richard Thomas, no settlement having been had between him and the said Mitchell of the affairs of Mitchell and David Thomas. That afterwards, on the 29th day of November, A. D. 1865, the said note was duly sold by the Sheriff, under and by virtue of said execution, to the plaintiff in this suit, for the sum of one hundred and fifty dollars. That before said sale Mitchell stated to plaintiff that he only owed to David Thomas the sum of forty-five and twenty-three one hundredths dollars on account of all claims against him for the personal property received, as mentioned in Finding Two.

"8. That at the commencement of this suit the plaintiff was and now is the owner and holder of the note in suit, and that no portion of the same was ever paid, though ever since due and payable.

"As conclusions of law from the foregoing facts, the Court finds:

"That plaintiff is entitled to recover judgment against the defendant for the full amount of said note, and legal

interest thereon from its date, together with costs of this action."

Judgment was entered accordingly.

Upon the defendant's motion for a new trial, made upon the grounds—first, that the evidence did not support the findings of the Court, and, second, that the findings of the Court do not support the judgment, heard upon a statement, the Court granted a new trial. To this order the plaintiff duly excepted, and appealed therefrom to this Court.

The other facts are stated in the opinion of the Court.

*Caleb Dorsey*, for Appellant.

If David Thomas had brought suit against respondent on the note, he could not have set up the agreement between himself and Thomas in defence of the note. " Contemporaneous oral agreements which vary, contradict, qualify, add to, or subtract from the absolute terms of a written contract, cannot be set up in defence against such written contract." (2 Parsons on Bills and Notes, 501, 509–13, 523–25.) The facts, as developed by the findings, showed a fraudulent arrangement between respondent and David Thomas, to defraud the creditors of Thomas, and the respondent cannot be permitted to set up his own fraud in defence of the note. The note in suit was subject to seizure and sale as the property of David Thomas, and upon its delivery to plaintiff his title thereto was complete. (Practice Act, Secs. 124, 125, 217, 220 ; *Roberts* v. *Landecker*, 9 Cal. 266.)

*Charles C. Brown*, for Respondent.

Though parol evidence cannot as a general rule be admitted to vary the terms of a written contract, it is a well settled rule in this State that it is admissible to show the purpose for which the instrument itself was executed. (*Pierce* v. *Robinson*, 13 Cal. 116 ; *Johnson* v. *Sherman*, 15 Cal. 291 ; 2 Parsons on Notes and Bills, 522.) The rule relied on

by plaintiff goes only to the admission of evidence; and as he made no objection at the time it was offered, he cannot now object. The rule invoked is one that may be waived. (1 Greenl. Ev., Sec. 421.) Plaintiff is not a *bona fide* holder of the note. He acquired the note after maturity and dishonor, with full knowledge of the defence set up, out of the usual course of trade, contrary to the custom in England or America, against the will and consent of all the parties interested in it, and from one not capable of transferring it. (1 Parsons on Notes and Bills, 254; *Johnson* v. *Sherman*, 15 Cal. 291.)

" Could respondent, in a suit by Thomas against him on the note, have set up the agreement between himself and Thomas in defence of the note ?" If Thomas had not objected, he certainly could; and if Thomas *had* objected, he could have shown a fraudulent diversion of the note from the purpose for which it was made and delivered. (*Coghlin* v. *May*, 17 Cal. 515; *Denniston* v. *Bacon*, 10 Johns. 198; *Scott* v. *Betts*, Lalor, 363; *Clark* v. *Dearborn*, 6 Duer, 309; *Beers* v. *Culver*. 1 Hill, 589.)

The plaintiff having invoked the stringent provisions of the Attachment Act, he was bound to pursue it. (*Roberts* v. *Landecker*, 9 Cal. 265.) He should have taken defendant's answer as true or have controverted it, according to the provisions of the Act invoked by him. (Drake on Attachment, 669 *et seq.*; *Ogden* v. *Mills*, 3 Cal. 253.) And not having done so, he is precluded from proceeding by suit on the indebtedness. A promissory note is not subject to seizure and sale on execution, and no title will pass to the purchaser under such sale and delivery. (*Maine F. and M. Ins.* v. *Weeks*, 7 Mass. 439; *Ingalls* v. *Lord*, 1 Cowan, 240; *McClelland* v. *Hubbard*, 2 Blackf. 361; *Johnson* v. *Crawford*, 6 Blackf. 377; *Goodman* v. *Duffield*, Wright, 455; *Field* v. *Lawson*, 5 Pike, 376; *Rhodes* v. *McGonegal*, 2 Barr, 39; *McGhee* v. *Cherry*, 6 Geo. 550; Hilliard on Sales, 78; *Taylor* v. *Gilleau*, 23 Texas, 508; Allen on Sheriffs, 161; *Crandall*

v. *Blenn,* 13 Cal. 23; *Ransom* v. *Miner,* 1 Code R., N. S., 98; *Adams* v. *Hackett,* 7 Cal. 203.)

The form of assigning a chose in action is in the nature of a declaration of trust, (2 Bl. Com., Sec. 442,) and must therefore be voluntary, or by decree of Court. The sale and delivery of a promissory note, seized and sold on execution by the Sheriff, will not subrogate a purchaser to the right of the payee, nor invest him with the rights of one who acquires a promissory note in the usual course of trade. (Dixon on Subrogation, 164–7.)

By the Court, SANDERSON, J. :

The one hundred and twenty-fourth section of the Practice Act provides, among other things, that " all debts due such defendant, and all other property in this State of such defendant not exempt from execution, may be attached, and if judgment be recovered, be sold to satisfy the judgment and execution." Subdivision five of section one hundred and twenty-five provides that debits and credits shall be attached in a certain mode therein provided. Section two hundred and seventeen provides that " all goods, chattels, moneys and other property, both real and personal, or any interest therein, of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution. Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in either real or personal property, and all other property not capable of manual delivery, may be attached on execution, in like manner as upon writs of attachment." Section two hundred and twenty, among other things, provides that the Sheriff shall execute an execution " by collecting or selling the things in action." Section two hundred and twenty-eight provides that the Sheriff shall execute and deliver to the purchaser of personal property

not capable of manual delivery, a certificate of sale and payment; and that such certificate shall convey to the purchaser all right, title and interest which the debtor had in and to such property on the day the execution was levied.

Under the foregoing provisions there can be no doubt but that the note in suit was liable to seizure and sale under execution against the holder and payee, David Thomas. It was a "credit" within the meaning of the statute. (Webster's Dictionary, word "credit," 10.)

By the six hundred and forty-second section of the Code of Practice of Louisiana, the Sheriff, under an execution, is required "to seize the property, real and personal, rights and *credits* of the debtor, and to sell them to satisfy the judgment obtained against him." Under this provision it has been held in that State that the right of a defendant in a promissory note may be sold under an execution (*Brown* v. *Anderson*, 4 Martin, N. S., 416), and that an actual seizure by the Sheriff is not required. ( *Wilson* v. *Munday*, 5 Louisiana, 483.) In subsequent cases, however, this latter point seems to have been decided the other way. ( *Goubeau* v. *N. O. and N. R. R. Co.*, 6 Robinson, 345; *Simpson* v. *Allain*, 7 Robinson, 500; *Fluoker* v. *Bullard*, 2 La. An. 338; *Offut* v. *Monquit*, 2 La. An. 875; *Taylor* v. *Stone*, 2 La. An. 910; *Stockton* v. *Stanbrough*, 3 La. An. 390.)

In *Adams* v. *Hackett*, 7 Cal. 187, this doctrine was announced as a judgment. In *Johnson* v. *Reynolds*, which was decided about the same time as *Adams* v. *Hackett*, but does not seem to have been reported, it was applied to promissory notes. Johnson sued Reynolds upon two promissory notes made by him in favor of Adams & Co., which he had purchased at a Sheriff's sale under an execution against Adams & Co., by virtue of which the Sheriff had seized and taken the notes into his possession. These facts were set out at length in the complaint. The defendant demurred on the ground that the plaintiff did not become the lawful owner and holder of the notes by reason of the sale and delivery to him by the Sheriff. The Court below sustained

the demurrer, and the plaintiff appealed. This Court reversed the judgment, holding that the notes were liable to seizure and sale under execution, and that by virtue of the Sheriff's sale the plaintiff had become the lawful owner and holder of the notes, and therefore entitled to sue.

In the subsequent case of *Crandall* v. *Blen*, the policy of the statute was somewhat severely criticised, but the previous decisions were not disturbed. (13 Cal. 15.) Whether a note or other chose in action can be levied upon and sold without being taken into his possession by the officer, has not been decided so far as we are advised, nor is it necessary that it should be decided in this case, for the note in suit, as the case shows, was taken into his possession by the officer and at the sale delivered to the purchaser. The question was involved to some extent in the case of *Crandall* v. *Blen*, but it was not decided. The Court there held that it could not be done unless the officer had a full and accurate description of it, and could give at the sale a full explanation of the conditions and facts determining its value, which was not true, as the Court held, of that case.

Of course by such a sale the purchaser takes the note upon the same terms upon which he would have taken it had it come into his hands in the ordinary course of business. In this case the note was overdue at the time of the sale, and the plaintiff therefore bought it, subject to all existing defences. He stands in the shoes of Thomas, and cannot recover if Thomas could not, were he the plaintiff. What, then, would Thomas be entitled to recover had he brought this action? Or, in other words, what defence could Mitchell make after admitting, as he does, the execution and delivery of the note?

If the transaction between him and Thomas, of which the note in suit was a part, was a fraudulent transaction as against the creditors of Thomas, he could neither aver nor prove the fraud in defence of the action. Mitchell could no more show the fraud in defence of an action upon the note

12

than Thomas could show it in an action to recover back the property. To such an action and such a defence the Courts will not listen, but, in the language of Mr. Justice Baldwin, in *Abbe* v. *Marr*, "will shut their doors in the faces of the intruders." (*Abbe* v. *Marr*, 14 Cal. 210; *Valentine* v. *Stewart*, 15 Cal. 387; *Gregory* v. *Haworth*, 25 Cal. 653.)

That such was the real character of the transaction does not admit of doubt. The Court below so finds, and the finding is fully sustained by the testimony. The attempt by the defendant in his answer to give the transaction a different color is shown by the testimony to be a complete failure. Neither party can be relieved from the position in which he has placed himself by the fraud which they successfully perpetrated. The law holds them to their bargain, and does not permit them to call themselves and each other names.

Order granting new trial reversed.

Mr. Justice Rhodes expressed no opinion.