Argued September 14, reargued December 1, affirmed
December 8, 1965

# HOBGOOD *v.* SYLVESTER
408 P. 2d 925

*Donald H. Joyce,* Portland, argued the cause and filed a brief for appellant.

*Cleveland C. Cory,* Portland, argued the cause for respondent. With him on the brief were Clarence R. Wicks and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before PERRY, Presiding Justice, and SLOAN, GOOD-WIN, DENECKE, HOLMAN, LUSK and SCHWAB, Justices.

GOODWIN, J.

Plaintiff commenced an action to recover an alleged debt from nonresident defendants. To obtain *quasi-in-rem* jurisdiction over the defendants, plaintiff sought to attach a debt owed them by third-party Oregon residents. From an order quashing the return of service upon motion made by way of a special appearance, plaintiff appeals.

The debt sought to be attached in these proceedings was the unpaid balance of the purchase price of land, which debt had been evidenced by a negotiable promissory note and secured by a mortgage on the land. In answer to the notice of garnishment, the garnishees eventually acknowledged the installment debt, described the note, and correctly stated that no payment was due as of the date of the return.[1] (The first return had stated: "Nothing due now.")

---

[1] While there is no issue upon the point in the case at bar because the garnishee admitted some indebtedness to the defendants, it has been suggested that a garnishee in his return could

The issue is whether, for jurisdictional purposes, a debt which is evidenced by a negotiable instrument can be attached under ORS 29.170② by simply serving the debtor with the notice described in subsection (3). The alternative would require the instrument itself to be brought under a sheriff's control as "property" described in subsection (2). The plaintiff was unable to effect the seizure of the note, which reposed in a California bank.

The underlying theory of *quasi-in-rem* jurisdiction does not contemplate a typical personal judgment against the defendant, but only a judgment to the extent of the defendant's property within the state. The concept, classically illustrated in *Pennoyer v. Neff,* 95 US 714, 24 L Ed 565 (1878), is that, where the court controls the disposition of a defendant's property through attachment, as an exercise of the sovereign's power over property found within its borders, the court can also adjudicate unrelated personal rights of the nonresident property owners, and enter judgment up

---

properly describe the note, and on information and belief allege that because the instrument may have been negotiated he is not indebted to the defendant but only to the holder of the instrument. The garnishee could thus protect himself by requiring the plaintiff to bring the necessary parties before the court or otherwise make provision for protecting the garnishee against double liability. See 6 Am Jur 2d 817, Attachment and Garnishment, §§ 366, 367 (1963).

② Manner of executing writ. "The sheriff to whom the writ is directed and delivered shall note upon the writ the date of such delivery, and shall execute the writ without delay, as follows:

"(1) To attach real property * * *.

"(2) Personal property capable of manual delivery to the sheriff, and not in the possession of a third person, shall be attached by taking it into * * * [the sheriff's] custody.

"(3) Other personal property shall be attached by leaving a certified copy of the writ, and a notice specifying the property attached, with the person having possession of the same, or if it be a debt, then with the debtor * * *."

to the value of their property within the court's control. Due process is satisfied by the presumption that a person ordinarily keeps track of his property, and will come in and defend the case. The property may be tangible or intangible, *Harris v. Balk,* 198 US 215, 25 S Ct 625, 49 L Ed 1023 (1905), but it must be brought under the control of the court so that it can be sold, if need be, on execution. Thus, *quasi-in-rem* jurisdiction is not to be confused with personal jurisdiction that may be obtained under ORS 14.035.

■ The inquiry involves two questions: (1) whether the attachment attempted under ORS 29.170 (3) which did not effect a change in the possession of the negotiable instrument[9] was an effective attachment of the debt; and (2) if not an effective attachment, was it nonetheless sufficient to confer jurisdiction?

If the court should, in a case like the one now pending, enter judgment against the defendants, it would be asked to order execution of the judgment. The purchaser of the debt at the execution sale would, presumably, demand payment of the next installment to fall due under the terms of the note. See cases on garnishment of installment debt, collected in Annotation, 7 ALR2d 680 (1949). Assuming that the garnishee

___

[9] While the fact is not controlling here, the note in this case was transferred to another nonresident holder by the payee after the action was commenced. It is not contended that the garnishee knew of the transfer. We need not inquire into the character of the transfer, i.e., whether it was a negotiation to a holder in due course, or whether it occurred before or after the garnishee received notice of the attachment. It is the character of the instrument rather than the incidents of its transfer in any particular case that should determine which subsection of the statute controls the attachment. In a creditor's suit to set aside a transfer, with all interested parties before the court, the incidents of the transfer would be relevant. Here, however, we are dealing with the potential legal effect of a negotiable instrument as commercial paper entitled to all presumptions in its favor.

should pay an installment under the compulsion of such an execution, however, such a payment would not be a defense to an action against the garnishee by a holder in due course. ORS 73.3020.

■■ If a holder in due course acquires a negotiable instrument, he takes it free of all defenses of any party to the instrument with whom the holder has not dealt (except for certain statutory defenses not relevant here). ORS 73.3020 to 73.3050. Even payment is no defense against a holder in due course, and a maker of a negotiable instrument who pays the original payee all or part of the debt evidenced thereby may be compelled by a holder in due course to pay again. See *Whitney v. Day,* 86 Or 268, 168 P 295 (1917); *Nordyke v. Charlton,* 108 Iowa 414, 79 NW 136 (1899); Britton, Bills and Notes 16, § 5 (2d ed 1961).

In *Whitney v. Day,* supra, this court held that when a debt is evidenced by a negotiable instrument, attempted levy of execution against the debt without reduction of the instrument to the sheriff's possession gives the judgment creditor no interest in the note as against a holder in due course of the note. This rule seems to be in harmony with authority elsewhere. See 6 Am Jur2d 673, Attachment and Garnishment § 158 (1963). *Whitney v. Day* appears to assume, without deciding, that the debt evidenced by the note would not be payable without surrender of the note.

■ In *Fishburn v. Londershausen,* 50 Or 363, 92 P 1060, 14 LRA (ns) 1234 (1907), this court held that a negotiable instrument was "personal property capable of manual delivery." We believe that when a debt has been evidenced by such an instrument, because of the peculiar incidents of negotiability the debt cannot be attached effectively without bringing the instrument

under the court's control. The reason given for this rule in other jurisdictions is that without obtaining control of the instrument, the court cannot protect the maker against double liability. See, e.g., *Nordyke v. Charlton,* supra; *Willis & Bro. v. Heath,* 75 Tex 124, 12 SW 971 (1889); *Carson v. Allen,* 2 Pinney 457, 2 Chand 123, 54 Am Dec 148 (Wis 1850).

 An attempted attachment under subsection (3) obviously is not effective to enable the court to issue a writ of execution upon the note. If execution is attempted upon the debt without surrender of the instrument, the execution would be either an empty gesture or, if it produced a payment, the payment could work substantial injustice upon the garnishee. The garnishee is, between the litigants, an innocent third person. Accordingly, we hold that where the return of a garnishee shows that a debt has been evidenced by a negotiable instrument, an attachment of the debt does not confer *quasi-in-rem* jurisdiction upon the court until the instrument itself is reduced to the possession of the sheriff. The only purpose of *quasi-in-rem* jurisdiction is defeated if the court cannot dispose of the property sought to be attached without invading the rights of innocent third persons.[4]

The order quashing the return of service is affirmed.

---

[4] There is no need to decide in this case what procedure would suffice to bring resident parties in possession of a note before the court so that the rights of all interested parties could be protected. In the case at bar the instrument and those apparently entitled to its possession were all beyond the reach of Oregon process.